## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**NATALIE HENDERSON**                          **CIVIL ACTION**

**VERSUS**                                                     **No. 25-1254**

**GLORIA WOODS, ET AL.**                          **SECTION I**

## ORDER AND REASONS

Before the Court are two motions[1] to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) filed by defendants Gloria Woods ("Woods"), UMG Recordings, Inc. ("UMG"), W Chappell Music Corp. ("Warner"), CMG Enterprises II, Inc. ("CMG"),[2] and BMG Rights Management (US) LLC ("BMG") (collectively, "defendants"). Plaintiff Natalie Henderson ("plaintiff") opposes the motions,[3] and has filed a motion[4] to conduct jurisdictional discovery. Defendants filed replies[5] to plaintiff's oppositions and opposed[6] plaintiff's motion to conduct jurisdictional discovery. For the following reasons, the Court grants defendants' motion to dismiss pursuant to Rule 12(b)(2) and denies plaintiff's motion to conduct jurisdictional discovery.

---

[1] R. Doc. No. 17; R. Doc. No. 18.

[2] Plaintiff incorrectly named defendant CMG as "Collective Music Group, LLC d/b/a CMG The Label" in her complaint. R. Doc. No. 1 ¶ 9; R. Doc. No. 17 at n.1. Plaintiff's counsel has advised this Court that plaintiff has no objection to defendant CMG being referred to as "CMG Enterprises II, Inc."

[3] R. Doc. No. 22; R. Doc. No. 23.

[4] R. Doc. No. 21.

[5] R. Doc. No. 24; R. Doc. No. 25.

[6] R. Doc. No. 26.

# I.    BACKGROUND

This case arises out of a copyright dispute between plaintiff and defendants.[7] Plaintiff, professionally known as "Slimdabodylast," alleges that defendant Woods, a musical artist professionally known as "GloRilla," infringed upon plaintiff's copyright for the song "All Natural" through the "unauthorized reproduction, distribution and/or prior performance" of the song.[8] Plaintiff also alleges that defendants[9] infringed on her copyright through the production and distribution of defendant Woods's song "Never Find (feat. K Carbon)," ("Never Find") which appeared on a digital exclusive version of her album "Glorious."[10]

Plaintiff alleges that beginning on January 6, 2024, she "made several social media posts concerning her modeling and physique that went viral."[11] "Specifically, [p]laintiff refers to her physique that is 'all naturale, no BBL.'"[12] Plaintiff alleges that

---

[7] R. Doc. No. 1 ¶ 1.

[8] *Id.* ¶ 12.

[9] As stated in plaintiff's complaint, defendant Woods "is known for the production, recordation and composition of music that is distributed worldwide via the internet and other digital devices" who "co-authored the musical composition and performed vocals on" Never Find. *Id.* at 7. Defendant UMG "distributes and sells sound recordings created by [d]efendant Woods." *Id.* ¶ 8. Plaintiff alleges that defendant UMG "supervised the illegal reproduction of the [i]nfringing [t]rack . . . and authorized the illegal reproduction and distribution of the [p]laintiff's copyright protected work." *Id.* Defendant CMG is a music label who plaintiff alleges "does substantial, continuous and systematic business in the State of Louisiana and in this judicial district." *Id.* ¶ 9. Defendant Warner "is responsible for music royalties from the publication of the infringing works on behalf of the authors and composers of the infringing work." *Id.* ¶ 10. Plaintiff states that defendant BMG is likewise "responsible for collecting music royalties from the publication of the infringing work on behalf of the authors and composers of the infringing work." *Id.* ¶ 11.

[10] *Id.* ¶ 17; R. Doc. No. 17-2 ¶ 7; R. Doc. No. 17-3 ¶ 8.

[11] *Id.* ¶ 13.

[12] *Id.*

"[t]he aforesaid reference and video posts went viral through several published social media posts on Instagram" and "has garnered over one (1) million views and likes."[13] Plaintiff alleges that to take advantage of her social media success, she wrote and released the song All Natural.[14] According to plaintiff, the lyrics to the song All Natural included the "all naturale, no BBL" phrase from plaintiff's Instagram posts in its chorus, which is repeated three times during the song[15] and includes the lyrics "Slimdabodylast / All natural, no BBL / Mad h**s go to h**l / All natural, all natural, all, all natural / No, no BBL."[16] Plaintiff states that her song is registered with the U.S. Copyright Office under Registration Number SRul-579-013.[17] Plaintiff alleges she "is the listed author and copyright claimant on the aforesaid registration."[18] Plaintiff also alleges All Natural has been distributed through all major music streaming platforms and digital music outlets.[19] Plaintiff claims she is the sole owner of the copyright registered for the song and the sole author of the "master, sound recordings, musical composition, and lyrics for the subject song."[20]

According to plaintiff's complaint, defendant Woods "without express authorization copied protected elements of 'All Natural' in her sound recording, 'Never Find.'"[21] Never Find was "released and distributed by [d]efendant UMG

---

[13] *Id.*
[14] *Id.* ¶ 14.
[15] *Id.* ¶ 21.
[16] *Id.* ¶ 14.
[17] *Id.* ¶ 15.
[18] *Id.*
[19] *Id.*
[20] *Id.* ¶ 16.
[21] *Id.* ¶ 17.

through its recording label imprints, CMG [sic] and Interscope Records, as part of [d]efendant Woods's album 'Glorious.'"[22] Plaintiff alleges that defendants "BMG and [Warner] also collected royalties from the exploitation of the infringing work on behalf of several publishers and [d]efendant Woods."[23] Plaintiff states that "[d]efendants released and distributed the infringing work in the State of Louisiana, United States and worldwide for streaming on all major streaming services" and that "[t]he infringing work is accessible, and available for consumer use, in Louisiana by the [p]laintiff and other Louisiana Residents through utilizing one of the streaming services" which are "available for use by Louisiana residents."[24]

Plaintiff states that she did not authorize the defendants to reproduce, distribute, or otherwise create a derivative work of All Natural.[25] However, plaintiff alleges that defendants "have misappropriated many of the recognizable and key protected elements of the [p]laintiff's works into their infringing work 'Never Find.'"[26] Specifically, plaintiff alleges that "[d]efendant[] Woods copies the lyrics, content, and melody from [p]laintiff's 'All Natural' to create the infringing 'Never Find.'"

Plaintiff alleges that Never Find misappropriates the lyrics "Slimdabodylast, all naturale, no BBL, mad h**s go to h**l" of All Natural and interpolates them as "Natural, no BBL, but I'm still gon' give them h**l."[27] Plaintiff alleges that due to

---

[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.* ¶ 18.
[26] *Id.* ¶ 20.
[27] *Id.* ¶ 21.

defendants' unauthorized copyright infringement, "a layperson . . . could conclude that [the] songs are essentially identical."[28]

Plaintiff filed her complaint[29] on June 18, 2025, alleging copyright infringement against all defendants based on the previously mentioned facts she alleged.[30] Defendants filed a motion[31] to dismiss plaintiff's claims pursuant to Rule 12(b)(2) and 12(b)(3), and another motion[32] to dismiss plaintiff's claims pursuant to Rule 12(b)(6). Plaintiff filed responses[33] in opposition to each motion, as well as a motion[34] to conduct limited jurisdictional discovery. Defendant filed a reply[35] to each of plaintiff's responses in opposition to their motions, and a response[36] in opposition to plaintiff's motion to conduct jurisdictional discovery.

## II.    STANDARD OF LAW

In the context of a motion filed pursuant to Rule 12(b)(2), a plaintiff must establish a court's personal jurisdiction over the defendant. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). While the plaintiff must ultimately demonstrate that jurisdiction is proper by a preponderance of the evidence, courts are permitted to defer the resolution of that question until trial to allow it to be resolved along with

---

[28] *Id.* ¶ 19.
[29] *Id.*
[30] *Id.* ¶¶ 23–35.
[31] R. Doc. No. 17.
[32] R. Doc. No. 18.
[33] R. Doc. No. 22; R. Doc. No. 23.
[34] R. Doc. No. 21.
[35] R. Doc. No. 24; R. Doc. No. 25.
[36] R. Doc. No. 26.

the merits. *See Walk Haydel & Assoc., Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

"When the defendant challenges personal jurisdiction pursuant to a Rule 12(b)(2) motion, the matter may be determined without an evidentiary hearing," in which case the plaintiff bears the burden of establishing a *prima facie* case that the Court has jurisdiction over a defendant. *Diagnostic Affiliates of Ne. Hou., LLC v. Aetna, Inc.*, 654 F.Supp.3d 595, 602 (S.D. Tex. 2023); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). A court is not required to hold an evidentiary hearing unless "material facts" regarding the existence of personal jurisdiction "are in dispute." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). "Establishing a *prima facie* case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Johnston*, 523 F.3d at 609. Additionally, "the court may receive interrogatories, depositions, or any combination of the recognized methods of discovery to help it resolve the jurisdictional issue." *Id.* (citation modified).

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over

that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). As "the limits of the Louisiana long-arm statute are coextensive with constitutional due process limits," the Court need only consider the second step of the inquiry. *Walk Haydel*, 517 F.3d at 242–43 (citing *A&L Energy, Inc. v. Pegasus Group,* 791 So.2d 1266, 1270 (La. 2001)). The constitutional requirements for personal jurisdiction may be satisfied by a showing that (1) the defendant has "minimum contacts" with the forum state such that imposing a judgment (2) would not "offend traditional notions of fair play and substantial justice." *Luv N' care, Ltd., v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

"The 'minimum contacts' prong is further subdivided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction." *Freudensprung v. Offshore Tech. Serv., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

> Where a defendant has continuous and systematic general business contacts with the forum state, the court may exercise general jurisdiction over any action brought against the defendant. Where contacts are less pervasive, the court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum.

*Luv N'* care, 438 F.3d at 469 (citation modified).

## A. General Jurisdiction

General jurisdiction allows a court to exercise personal jurisdiction over a defendant regardless of whether the claim arises from specific contacts between the defendant and the forum state. *Wilson*, 20 F.3d at 647. The two "paradigmatic" places

in which a corporation is typically subject to general jurisdiction are (1) its state of incorporation and (2) the state in which it maintains its principal place of business. *Strong v. Bank of America Corp.*, No. 25-10199, 2025 WL 1795109, at *2 (5th Cir. 2025) (applying this test to determine whether general jurisdiction could be asserted over a defendant-corporation). "When determining the scope of general personal jurisdiction over a limited liability company ("LLC"), the Fifth Circuit conducts the same inquiry as it does for corporations." *Laday v. Roderick*, No. 22-261, 2023 WL 2188706, at *2 (E.D. Tex. Feb. 23, 2023) (citing *Frank v. P N K (Lake Charles) LLC*, 947 F.3d 331, 336–38 (5th Cir. 2020)). For example, in *Laday*, the court looked to the state where the LLC was organized and maintained its principal place of business. *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F.Supp.3d 664, 674 (S.D. Tex. Dec. 18, 2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

It is "incredibly difficult to establish general jurisdiction in a forum other than" the "paradigmatic" place in which a defendant is typically subject to jurisdiction. *Monkton Ins. Servs. Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). To meet this high threshold, plaintiff must show that defendant maintains such "continuous and systematic" contacts with the forum state such that the defendant can fairly be described as "at home" in the forum state. *Frank*, 947 F.3d at 336 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

## B. Specific Jurisdiction

In contrast to general jurisdiction, specific personal jurisdiction is a claim-specific inquiry, allowing a court to exercise personal jurisdiction over a defendant only for claims that arise out of the defendant's contacts with the forum state. *Wilson*, 20 F.3d at 647. "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each of them . . . the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006).

The Fifth Circuit follows a three-step analysis for specific jurisdiction. First, the Court must determine "whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Nuivo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002). The "minimum contacts" inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it "reasonably anticipates being haled into court" in the forum state. *Luv N' care,* 438 F.3d at 470 (quoting *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Moncrief Oil*, 481 F.3d at 312 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

Second, the Court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." *Nuivo Pignone,* 310 F.3d

at 378. The focus of the analysis is the "relationship among the defendant, the forum, and the litigation." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008).

Third, "[i]f the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that [the court's] exercise of jurisdiction would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271 (citing *Burger King*, 471 U.S. at 482). "The relationship between the defendant and the forum must be such that it is reasonable to require the defendant to defend the particular suit which is brought there." *Johnston*, 523 F.3d at 615. (quoting *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 630 (5th Cir. 1999). However, "it is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *Id.* (citing *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). To determine whether the defendant met its burden to show that the exercise of jurisdiction would be unfair or unreasonable, the Court analyzes five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care,* 438 F.3d at 473.

## III.    DISCUSSION

### A.    General Jurisdiction

Defendant Woods is a resident of and domiciled in the State of Georgia.[37] Defendant UMG is a corporation incorporated in Delaware with its principal place of business in California.[38] Defendant CMG is also incorporated in Delaware and its principal place of business is in Tennessee.[39] Defendant Warner is incorporated pursuant to the laws of the State of California, and maintains its principal place of business in California as well.[40] Defendant BMG is a Delaware limited liability company with its principal place of business in New York.[41] None of the defendants reside in, are incorporated or organized under the laws of, or maintain their principal place of business in Louisiana.[42] Thus, none of the typical avenues for general jurisdiction apply here, and plaintiff must therefore show that each defendant maintains "continuous and systematic" contacts with Louisiana such that defendants can be fairly considered to be "at home" in this forum. *Frank*, 947 F.3d at 337. Plaintiff's complaint falls short of establishing these facts.

Plaintiff contends in her complaint that defendants "conduct continuous, systematic, and routine business within the State of Louisiana and/or within this district."[43] In support of this claim, plaintiff alleges that defendant Woods "has

---

[37] R. Doc. No. 17-6 ¶ 3 (affidavit of Frederick Files, defendant Woods's business manager).

[38] R. Doc. No. 17-2 ¶ 4 (affidavit of Sheryl L. Gold, corporate secretary for defendant UMG).

[39] R. Doc. No. 17-3 ¶ 4 (affidavit of Randy Acker, outside corporate general counsel for defendant CMG).

[40] R. Doc. No. 17-4 ¶ 3 (affidavit of Jeremy Blietz, Senior Vice President of Administration for North America for defendant Warner).

[41] R. Doc. No. 17-5 ¶ 3 (affidavit of Keith Hauprich, General Counsel and Executive Vice President for defendant BMG).

[42] R. Doc. No. 17-1 at 3–4.

[43] R. Doc. No. 1 at 2.

performed and/or will perform concert touring dates in this district" and "regularly returns to New Orleans to promote her career."[44] Plaintiff further alleges that defendants "have licensed, distributed, and exploited the [Never Find] (and other songs) in this state."[45]

However, in her response in opposition[46] to defendants' motion[47] to dismiss for lack of personal jurisdiction, plaintiff does not present any factual support with respect to her general jurisdiction claim.[48] Even if she had made this argument, plaintiff would not be able to show that defendants are "at home" in Louisiana.

Plaintiff's complaint alleges four specific instances in which defendant Woods "has performed and/or will perform" and "promote[d] her career" in Louisiana.[49] She alleges that defendant Woods performed in New Orleans on September 19, 2023, June 10, 2024, and July 4–7, 2025.[50] She further alleges that defendant Woods made a personal appearance in New Orleans "to promote her career" and "to further exploit the infringing work" during Super Bowl LIX.[51] Plaintiff alleges in her complaint that the other defendants conduct "continuous, systematic, and routine" business in Louisiana based on their distribution of musical works into and collection of royalties from Louisiana.[52]

---

[44] *Id.*
[45] *Id.*
[46] R. Doc. No. 22.
[47] R. Doc. No. 17.
[48] R. Doc. No. 22.
[49] R. Doc. No. 1 ¶ 4.
[50] *Id.*
[51] *Id.*
[52] *Id.* ¶ 3.

This falls far short of the contacts needed to establish general jurisdiction over defendants. *See, e.g., Fernandez v. Jagger*, No. 23-891, 2023 WL 6880431, at *3–5 (E.D. La. Oct. 18, 2023) (Fallon, J.) (finding that no personal jurisdiction existed over defendants when they had distributed music in Louisiana and defendant-musicians had performed in New Orleans four times), *aff'd*, 2024 WL 3717264 (5th Cir. Aug. 8, 2024) (affirming the district court's holding that there was no personal jurisdiction over defendants); *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415–16 (5th Cir. 1993) (finding no personal jurisdiction existed over defendants who had distributed music into the forum state); *Johnson v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610–12 (5th Cir. 2008) (finding that no general personal jurisdiction existed over the defendant in Texas when it had sold goods and service contracts to ten different customers in Texas, its employees periodically traveled to Texas to service equipment, it advertised in a national trade journal that circulated in Texas, and its employees attended multiple trade conferences in Texas). Merely conducting some portion of its business in a state is not sufficient to render a company subject to general jurisdiction in that forum. *Johnston*, 523 at 611–12. Moreover, the "*prima-facie*-case requirement does not require the court to credit conclusory allegations," such as plaintiff's claim that "[d]efendants conduct continuous, systematic, and routine business within the State of Louisiana and/or within this district."[53] *Panda Brandywine*, 253 F.3d at 869.

The factual circumstances in this case are extremely similar to those in *Fernandez*, affirmed by the Fifth Circuit, where the court found that there was no

---

[53] *Id.*

jurisdiction over the defendants. 2023 WL 6880431, at *3–5. In *Fernandez*, the defendant-musicians had also performed in New Orleans four times and the defendant-companies distributed music throughout Louisiana, just as plaintiff's complaint alleges defendants have done.[54] *Id.* Four visits to New Orleans by defendant Woods, and distribution of music in Louisiana by all defendants, are insufficient to meet the "high threshold" of establishing the "continuous and systematic" contacts that would render defendants "at home" in the State of Louisiana. *See, e.g.*, *id.*; *Monkton*, 768 F.3d at 432.

Plaintiff has failed to present a *prima facie* case that defendants are subject to general jurisdiction in the State of Louisiana. Accordingly, this Court cannot exercise general jurisdiction over defendants within the limits of the Due Process Clause.

### B.    Specific Jurisdiction

Plaintiff argues that specific jurisdiction exists over defendant Woods based on her creation of the song Never Find and her performances in New Orleans.[55] She argues that specific jurisdiction exists over defendants UMG and CMG based on their distribution of Never Find.[56] And she alleges that jurisdiction exists over defendants BMG and Warner based on their collection of royalties relating to Never Find.[57]

Plaintiff also argues that defendant's affidavits are hearsay and should not be considered by this Court.[58] Regardless of whether hearsay evidence may be

---

[54] *Id.* ¶¶ 3, 4.
[55] R. Doc. No. 1 ¶ 17.
[56] *Id.* ¶ 17
[57] *Id.*
[58] R. Doc. No. 21-1 at 5.

considered when deciding a motion to dismiss pursuant to Rule 12(b)(2), *see Head v. L.V. Sands, LLC*, 298 F.Supp.3d 963, 967–69 (S.D. Tex. 2018), *aff'd* 760 F.App'x 281 (5th Cir. 2019), plaintiff has not pointed to any specific statements in defendants' affidavits that she identifies as hearsay.[59] Moreover, the affidavits do not appear to contain hearsay statements as each affidavit begins with a statement that all the facts in the affidavit are within the declarant's personal knowledge.[60]

Two other sections of this Court have recently denied the existence of specific jurisdiction in cases with very similar factual circumstances. *Fernandez*, 2023 WL 6880431, at *3–5; *Paynes v. Woods*, No. 23-1308, 2024 WL 894901, at *2–3 (Guidry, J.) (Mar. 1, 2024), *aff'd* 2024 WL 3717264. The *Fernandez* court, affirmed by the Fifth Circuit in *Fernandez v. Jagger*, No. 23-30909, 2024 WL 3717264 (5th Cir. Aug. 8, 2024) [hereinafter *Fernandez II*], explained that the defendant performers "have not purposely directed their activities or availed themselves of the privileges of this District"[61] when they only performed in New Orleans four times, the same number of New Orleans performances that plaintiff alleges defendant Woods has conducted. 2023 WL 6880431, at *4. Additionally, in both *Fernandez* and the instant case, the

---

[59] R. Doc. No. 22 at 5.

[60] R. Doc. No. 17-2 ¶ 1 (affidavit of Sheryl L. Gold, corporate secretary for defendant UMG). R. Doc. No. 17-3 ¶ 1 (affidavit of Randy Acker, outside corporate general counsel for defendant CMG); R. Doc. No. 17-4 ¶ 1 (affidavit of Jeremy Blietz, Senior Vice President of Administration for North America for defendant Warner); R. Doc. No. 17-5 ¶ 1 (affidavit of Keith Hauprich, General Counsel and Executive Vice President for defendant BMG); R. Doc. No. 17-6 ¶ 1 (affidavit of Frederick Files, business manager for defendant Woods).

[61] The Court in *Fernandez* evaluated the defendants' contacts specifically with the Eastern District of Louisiana. However, in *Fernandez II*, the Fifth Circuit clarified that "our circuit has not yet endorsed this interpretation of 28 U.S.C. § 1400(a)." 2024 WL 3717264 at *2 n.2.

plaintiff did not claim that the work which allegedly infringed upon a copyright was ever performed in Louisiana.[62] *Id.* Nor had the defendant distributors purposefully availed themselves of Louisiana law when they "distributed the Accused Work like all other recordings that they control, with no special emphasis on this District." *Id.*; *Fernandez II*, 2024 WL 3717264, at *3 ("[Plaintiff] has not alleged that the defendants have targeted Louisiana in any particularized way beyond making music generally available on the internet.")

The *Paynes* court noted that, as in the instant case, defendants had made "the allegedly infringing work available for worldwide internet download" without a special emphasis on Louisiana. 2024 WL 894901 at *3. It found that plaintiff failed to establish a *prima facie* case of jurisdiction because personal jurisdiction based on this worldwide digital distribution would subject the defendants to jurisdiction based on "random, fortuitous, or attenuated contacts," which is prohibited by the Fourteenth Amendment. *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

---

[62] *See generally* R. Doc. No. 22. The defendants have also provided affidavits stating that Never Find has never been performed in Louisiana. R. Doc. No. 17-6 ¶ 7 (affidavit of Frederick Files, defendant Woods's business manager). The Court is able to consider affidavits submitted by defendants in deciding a motion to dismiss without allowing for jurisdictional discovery. *See Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) ("[T]he district court may consider the contents of the record at the time of the motion, including affidavits."); *Innova Hosp. San Anotnio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F.Supp.2d 587, 615 (N.D. Tex. 2014); *Paynes*, 2024 WL 894901 at *3 (considering affidavits submitted by defendants in its decision to deny jurisdictional discovery and citing cases that followed similar procedures).

Plaintiff does not allege that, during the worldwide distribution of and collection of royalties relating to Never Find, defendants placed any special emphasis on distribution in Louisiana.[63] If this Court was to find that it could assert personal jurisdiction over defendants, that "would result in the necessary conclusion that such a defendant would be subject to specific jurisdiction in *any* forum," which "is in plain contradiction with the due process requirement that 'no federal court may assume jurisdiction *in personam* of a non-resident defendant unless the defendant has meaningful contacts, ties, or relations with the forum state." *Paynes*, 2024 WL 894901, at *3 (emphasis in original) (quoting *Luv N' care,* 438 F.3d at 469). Plaintiff's claims would be properly brought in defendants' states of organization, principal place of business, or residence. *See Frank*, 947 F.3d at 337.

Both courts also found that at most, "a highly attenuated relationship" existed between the plaintiffs' underlying claims and the defendants' distribution of the infringing work. *Fernandez II*, 2024 WL 3717264, at *3 ("[S]imply marketing an allegedly copyright-infringing song to the 'broadest possible geographical basis'—including the forum state—amounts to a 'highly attenuated relationship' between the allegedly unlawful acts and the forum state that is insufficient to establish minimum contacts.") (quoting *Ham*, 4 F.3d at 416); *Paynes*, 2024 WL 894901, at *3. As the *Fernandez II* court stated, "there is no connection between the forum and the specific claims at issue." 2024 WL 3717264, at *3 (citing *Bristol-Myers Squibb Co. v. Super.*

---

[63] *See generally* R. Doc. No. 22.

*Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 265 (2017) ("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.")).

The same reasoning applies in the instant case. The defendants' distribution of music into Louisiana and collection of royalties, or lack thereof, has no bearing on the issue of whether defendants infringed upon plaintiff's copyrighted work. *Fernandez II*, 2024 WL 3717264, at *3; *Paynes*, 2024 WL 894901, at *2–4; *Ham*, 4 F.3d at 416 ("[Plaintiff] alleges no injury flowing from that distribution. Rather, resolution of this action depends solely upon whether [plaintiff] infringed copyrights owned by [defendants]"). It is undisputed that Never Find was not written, produced, or recorded in Louisiana.[64] Nor has the work ever been performed in Louisiana.[65] As previously stated, it is well settled that a defendant cannot be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts" without violating the Fourteenth Amendment. *Paynes*, 2024 WL 894901, at *3 (quoting *Rudzewicz*, 471 U.S. at 475). The underlying copyright claim does not "arise out of or result from the defendant's forum-related contacts" when those contacts consist solely of music distribution, musical performances at which the allegedly infringing work was not performed, and the collection of royalties. *Fernandez II*, 2024 WL 3717264, at *3; *Paynes*, 2024 WL 894901, at *2–4.

Nor would it be "fair and reasonable" to assert jurisdiction over defendants in this case. *Fernandez*, 2023 WL 6880431, at *3–5 *Paynes*, 2024 WL 894901, at *2–4.

---

[64] R. Doc. No. 17-6 ¶ 4 (affidavit of Frederick Files, defendant Woods's business manager).
[65] *Id.* ¶ 7.

As discussed, the relationship between defendants and this forum is "highly attenuated." *Fernandez II*, 2024 WL 3717264, at *3; *Paynes*, 2024 WL 894901, at *2– 4. And like in *Fernandez II*, Never Find "was written and recorded outside of Louisiana and was distributed nationwide without a particular emphasis on Louisiana." 2024 WL 3717264, at *3. Without more, such as an argument that defendants placed "special emphasis" on Louisiana in marketing Never Find, it would not be "fair and reasonable" for this Court to assert specific jurisdiction over defendants. *Id.*

Plaintiff, citing *Luv N' care*, argues that specific jurisdiction may be asserted based on "the mere placement of a product in the stream of commerce."[66] However, *Luv N' care*, which concerned the defendant's regular shipments of physical products into Louisiana, is inapplicable in this context. *See Fernandez II*, 2024 WL 3717264 at *2–3. When addressing virtual contacts, the Fifth Circuit follows a different line of cases, and it has held that "accessibility on the internet alone cannot sustain our jurisdiction." *Id.* (quoting *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320 (5th Cir. 2021); *see also Admar Int'l, Inc. v. Eastrock, LLC*, 18 F.4th 783, 788 (5th Cir. 2021) ("Merely running a website that is accessible in all 50 states, but that does not specifically target the forum state, is not enough to create the 'minimum contacts' necessary to establish personal jurisdiction in the forum state . . ."). When, as here, the contacts plaintiff alleges give rise to specific personal jurisdiction are based on internet availability, the Fifth Circuit has made it clear that something more than

---

[66] R. Doc. No. 22 at 8.

"universal accessibility" is required, and *Luv N' care*'s stream-of-commerce theory does not apply. *See Johnson*, 21 F.4th at 317–26; *Fernandez II*, 2024 WL 3717264 at *2–3; *Admar Int'l*, 18 F.4th at 786–88.

## C.    Jurisdictional Discovery

Plaintiff requests jurisdictional discovery to establish further contacts between defendants and this forum that plaintiff argues would show defendants' purposeful availment of the laws of Louisiana.[67] Specifically, plaintiff seeks discovery relating to: (1) "concerts in Louisiana whereby [d]efendant Woods may have performed;" (2) "any contracts the [d]efendants had with vendors in Louisiana to distribute and/or publish the infringing works or any musical work;" (3) "any marketing the [d]efendants directed toward Louisiana for the publication and distribution of the infringing works or any musical works of the [d]efendants;" (4) "the number of visits to Louisiana of [d]efendant Woods for the exploitation of [defendant Woods's] musical works;" (5) "any documents illustrating that the musical works created, published and distributed by the [d]efendants were consumed by residents of Louisiana;" (6) "any documents evidencing that the [d]efendants have chosen for their musical works to not be consumed in Louisiana;" (7) "copies of any and all advertisements and/or solicitations in Louisiana of any and all musical works of the [d]efendants;" (8) "any licensing agreements contracted with entities or persons in Louisiana regarding the musical works of the [d]efendants;" (9) "any social media posts of the [d]efendants directed toward consumers in Louisiana regarding the exploitation of the musical

---

[67] *See generally* R. Doc. No. 21.

works of the [d]efendants;" (10) "any agreements or other documents indicating the publication of the musical works on radio stations in Louisiana, documents and information regarding the publication of music videos exploiting the musical works of the defendants in Louisiana;" and (11) "the number of copies of the infringing work and other musical works sold and/or purchased in Louisiana."

The plaintiff "bears the burden of demonstrating the necessity of jurisdictional discovery." *Paynes*, 2024 WL 894901, at *3. Jurisdictional discovery is inappropriate when it would not lead to the disclosure of significant material facts. *Monkton*, 768 F.3d at 434; *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000); *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982). Such is the case before this Court.

Most of plaintiff's discovery requests seek information relating to "any musical work" of defendants.[68] However, plaintiff's claims do not "arise out of or result from" other musical works by defendant Woods that plaintiff does not allege infringe upon any of her copyrighted works. *See Paynes*, 2024 WL 849901 at *3 (rejecting jurisdictional discovery regarding the distribution of "any musical work" of the defendants). In the case of the other defendants, plaintiff's claims certainly do not "arise out of or result from" the musical works of artists other than defendant Woods and the efforts of defendants to distribute those works in Louisiana. *See id.* And plaintiff's claims do not "arise out of or result from" the distribution of musical works that were written before plaintiff's original work was released. *See id.*

---

[68] R. Doc. No. 21-1 at 3–4.

Nor do plaintiff's other jurisdictional discovery requests suggest that they would lead to the disclosure of significant material facts. *See id.*; *Monkton*, 768 F.3d at 434. First, as previously discussed, plaintiff's claims do not "arise out of or result from" defendant Woods's concerts or personal appearances in Louisiana, particularly when plaintiff has not made any allegations that Never Find was ever performed in Louisiana.[69] *See Fernandez II*, 2024 WL 3717264 at *3; *Ham*, 4 F.3d at 416.

Regarding plaintiff's request for contracts with vendors relating to defendant's distribution of "the infringing works or any musical work" in Louisiana, it is well-settled that contracts alone are not a sufficient basis to assert personal jurisdiction over a defendant. *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985); *Rudzewicz*, 471 U.S. at 479–87. Defendants have also submitted affidavits that no such contracts exist.[70]

Plaintiff relies on her counsel's purchase of a copy of defendant Woods's album "Glorious" on vinyl at a New Orleans record store as evidence that defendants "specifically targeted consumers in Louisiana."[71] However, Never Find was not included on the vinyl that plaintiff's counsel purchased, as it was only released as a bonus track on "an exclusive digital version" of the album "Glorious."[72]

---

[69] *See generally* R. Doc. No. 21-1; R. Doc. No. 17-6 ¶ 7 (Defendant Woods's business manager's affidavit stating that the allegedly infringing work has never been performed in Louisiana).

[70] R. Doc. No. 17-2 ¶ 9; R. Doc. No. 17-3 ¶ 6; R. Doc. No. 17-4 ¶ 8; R. Doc. No. 17-5 ¶ 5.

[71] R. Doc. No. 21-1 at 4.

[72] R. Doc. No. 17-2 ¶ 7 (affidavit of Sheryl L. Gold, corporate secretary of defendant UMG); R. Doc. No. 17-3 ¶ 8 (affidavit of Randy Acker, outside corporate general counsel for defendant CMG).

Plaintiff supports her motion for jurisdictional discovery with mere speculation, and plaintiff lacks factual support to support a finding that jurisdictional discovery would lead to the disclosure of significant material facts.[73] Instead, plaintiff lists a laundry list of unsupported allegations without linking them to particular defendants.[74]

Plaintiff's request for jurisdictional discovery would not be likely to lead to the disclosure of significant material facts and must be denied. *See Fernandez II*, 2024 WL 3717264 at *3; *Monkton*, 768 F.3d at 434; *Alpine View Co.*, 205 F.3d at 221; *Wyatt*, 686 F.2d at 284.

## IV.    CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the motion[75] to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is **GRANTED.**[76] Plaintiff's claims against defendant are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's motion[77] to conduct jurisdictional discovery is **DENIED**.

---

[73] *See generally* R. Doc. No. 21.

[74] *Id.*

[75] R. Doc. No. 17.

[76] Because of this Court's opinion with respect to personal jurisdiction, the Court does not reach defendant's venue arguments or whether plaintiff failed to state a claim upon which relief can be granted. *Cf. Fernandez*, 2023 WL 6880431 (declining to address defendants' arguments for dismissal pursuant to Rule 12(b)(6) after determining that the court lacked personal jurisdiction over defendants); *United States v. Texas Tech. Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999) (evaluating the question of personal jurisdiction before addressing any claim on its merits).

[77] R. Doc. No. 21.

**IT IS FURTHER ORDERED** that defendants' motions[78] to dismiss pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure are **DISMISSED AS MOOT**.

New Orleans, Louisiana, November 21, 2025.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[78] R. Doc. No. 18.